UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR MENDEZ OLIVARES, individually
and on behalf of others similarly situated,

                        Plaintiff,

            - against -

1761 FONDA MEXICO MAGICO LLC,
doing business as "Mexico Magico"; and
PACO PAREDES,

                        Defendants.

**ORDER**

17 Civ. 1082 (PGG) (KNF)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Victor Mendez Olivares commenced this putative collective action on

February 13, 2017 against his former employers, Defendant 1761 Fonda Mexico Magico LLC

("Mexico Magico") – a Mexican restaurant in the Bronx – and Defendant Paco Paredes – who

owns and manages that restaurant.  (Cmplt. (Dkt. No. 1) ¶¶ 1-4)  Plaintiff alleges that, while

employed by Defendants as a "food preparer, dishwasher, and . . . delivery worker," Defendants

failed to pay him minimum and overtime wages, in violation of the Fair Labor Standards Act

("FLSA") and the New York Labor Law ("NYLL").  (Id. ¶¶ 5, 76-98)  Plaintiff further alleges,

inter alia, that Defendants failed to (1) pay him spread-of-hours wages and (2) provide him with

wage statements and notices.  (Id. ¶¶ 99-108)

        On July 13, 2018, this Court entered an order of default against Defendants (see

Order of Default (Dkt. No. 43)), and referred the case to Magistrate Judge Kevin Fox for an

inquest on damages.  (Order of Reference (Dkt. No. 44))

        Judge Fox has submitted a Report and Recommendation ("R&R"), recommending

that (1) no damages be granted, because Plaintiff failed to present sufficient evidence from which

to determine his damages with "reasonable certainty"; and (2) this Court issue an order to show cause why Plaintiff's counsel should not be sanctioned, pursuant to Fed. R. Civ. P. 11, for presenting outdated law in Plaintiff's Proposed Findings of Fact and Conclusions of Law (Dkt. No. 47). (See R&R (Dkt. No. 50))  Plaintiff has filed objections to Judge Fox's R&R.  (Dkt. No. 51)

For the reasons stated below, Plaintiff's objections will be sustained, and this Court will award damages to Plaintiff in the amounts set forth below.

I.    **BACKGROUND**

A jury trial in this matter was scheduled to begin on June 25, 2018.  (See Dkt. No. 23)  However, after Defendants failed to appear at two scheduled conferences, the trial was adjourned sine die.  (See Dkt. No. 32)

In June 2018, Plaintiff obtained a Clerk's Certificate of Default against each Defendant and moved for default judgment.  (Dkt. Nos. 35-38)  In support of his motion, Plaintiff submitted, inter alia, a Declaration by Plaintiff's counsel – Colin Mulholland – in which counsel sets forth Plaintiff's calculation of damages and attorneys' fees.  (See Mulholland Decl. (Dkt. No. 38) ¶¶ 43-82; id., Ex. K (Dkt. No. 38-11) (Plaintiff's declaration); id., Ex. L (Dkt. No. 38-12) (damages chart); id., Ex. M (Dkt. No. 38-13) (attorneys' fees timesheet))

On July 19, 2018 – after conducting a show cause hearing (see Dkt. No. 41), this Court entered an order of default against Defendants (see Order of Default (Dkt. No. 43)), and referred the case to Judge Fox for an inquest on damages.  (Order of Reference (Dkt. No. 44))

On August 3, 2018, Judge Fox issued an order directing Plaintiff to file "(1) proposed findings of fact and conclusions of law; and (2) an inquest memorandum, accompanied by supporting affidavits and exhibits, setting forth proof of his damages."  (Aug. 3, 2018 Mag.

Order (Dkt. No. 45))  On August 24, 2018, Plaintiff filed his Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") (Dkt. No. 47) and Memorandum of Law (Dkt. No. 48), to which he attached, inter alia, a notarized document entitled "Declaration of Victor Mendez Olivares" (Dkt. Nos. 47-1, 48-11), a "Damages Calculation" chart (Dkt. No. 47-2, 48-12), and a document describing Plaintiff's attorneys' fees and costs (Dkt. Nos. 47-3, 48-13).

On March 4, 2019, Judge Fox issued an R&R, recommending that (1) no damages be granted, because Plaintiff had not presented sufficient evidence from which to determine his damages with "reasonable certainty"; and (2) this Court issue an order to show cause why Plaintiff's counsel should not be sanctioned, pursuant to Fed. R. Civ. P. 11, for presenting outdated law in Plaintiff's Proposed Findings as to the calculation of such damages.  (See R&R (Dkt. No. 50))

On the first point, Judge Fox acknowledges that Plaintiff submitted a declaration stating the time periods/hours he worked and payments he received, but Judge Fox states that neither this declaration – nor any other declaration or affidavit submitted in response to Judge Fox's order – addresses the amount of damages and attorneys' fees Plaintiff seeks or how such an amount is to be calculated.  (Id. at 4)[1]  Judge Fox notes that a chart regarding Plaintiff's damages is attached to Plaintiff's Proposed Findings and his Memorandum of Law, but that this chart is not accompanied by any "affidavit or other admissible evidence identif[ying] that document or explain[ing] its content."  (Id. at 4-5)  Judge Fox thus concludes that Plaintiff has not demonstrated the amount of damages to which he is entitled "with reasonable certainty," and recommends that he be awarded no damages.  (Id. at 5-6)

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

As to the second point, Judge Fox finds that Plaintiff's Proposed Findings –
signed by Attorney Colin Mulholland on August 24, 2018 – misstates the law with respect to
whether Plaintiff is entitled to recover liquidated damages under both the FLSA and NYLL.  (Id.
at 5)  Judge Fox notes that Mulholland dedicates "over five pages" to the discussion of whether
Plaintiff is entitled to duplicative liquidated damages, but that the case law cited in that
discussion was rendered "obsolete" by Rana v. Islam, 887 F.3d 118 (2d Cir. 2018).  (See id.; see
Rana, 887 F.3d at 123 (holding that an employee who prevails on claims for unpaid wages under
the FLSA and NYLL is not entitled to duplicative recovery of liquidated damages under both
statutes))  Because of Mulholland's inclusion of such "obsolete" legal arguments, Judge Fox
recommends that this Court issue an order directing Mulholland to show cause why he should
not be sanctioned pursuant to Fed. R. Civ. P. 11.  (R&R (Dkt. No. 50) at 5-6)

On March 7, 2019, Plaintiff filed objections to Judge Fox's R&R, challenging
each of Judge Fox's recommendations.  (Pltf. Obj. (Dkt. No. 51))  With respect to damages,
Plaintiff notes that he submitted declarations regarding the hours he worked and the pay he
received in both his original default judgment materials – submitted to this Court in June 2018 –
and in supplementary materials requested by Judge Fox.  (Id. at 5-6)  Plaintiff also notes that he
submitted a memorandum of law – with an attached damages chart and timesheet – supporting
his calculation for damages and attorneys' fees.  (Id. at 5 (citing Dkt. Nos. 48, 48-12, 48-13))
Plaintiff's damages chart and timesheet[2] had previously been submitted to this Court in June
2018, attached to a declaration from Mulholland.  (Id. at 6-7 (citing Dkt. Nos. 38, 38-12, 38-13))
Plaintiff argues that these submissions provide a sufficient basis from which to compute damages

---

[2]  The timesheet submitted in response to Judge Fox's order reflects additional costs incurred
since the prior timesheet had been submitted.  (Compare Mulholland Decl., Ex. M (Dkt. No. 38-
13), with Inquest Br., Ex. M (Dkt. No. 48-13))

and attorneys' fees and that, if any submissions are lacking, Plaintiff should be permitted to file additional submissions, rather than entering judgment on the current record. (Id. at 6-7)

As to Judge Fox's recommendation regarding counsel's purported Rule 11 violation, counsel apologizes for his error but argues that he did not violate Rule 11. Counsel states that (1) his inclusion of pre-Rana case law was accidental, due to his use of an "older template" for his submission; and (2) all damages calculations presented in his submissions incorporated the correct (single) liquidated damages calculation under Rana. (Id. at 8-9)

## II.   REVIEW OF JUDGE FOX'S REPORT AND RECOMMENDATION

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where, as here, a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

Upon review of Plaintiff's submissions and Judge Fox's R&R, this Court declines to adopt Judge Fox's recommendations. As described in Plaintiff's objections, Plaintiff has provided ample evidence of his damages – including through his declaration, damages charts, and timesheets – from which this Court can calculate the damages and attorneys' fees to which he is entitled. Likewise, Plaintiff's counsel has stated that his inclusion of admittedly outdated law in his Proposed Findings was a mere oversight, due to the recent developments in the law and his use of an outdated template for his submissions. He also notes that the relief he requested for Plaintiff reflected the current law on the matter of liquidated damages. While Rule 11 requires that all legal contentions be "warranted by existing law or by a nonfrivolous

argument for extending, modifying, or reversing existing law or for establishing new law," see Fed. R. Civ. P. 11(b)(2) and (c), no award of sanctions is appropriate here, because counsel's conduct was not willful.

Accordingly, Plaintiff's objections to Judge Fox's R&R will be sustained, and Judge Fox's recommendations will not be adopted by this Court.  Instead, this Court will determine Plaintiff's damages and an appropriate attorneys' fee award on the current record.

## III.   PLAINTIFF'S DAMAGES

### A.   Facts Relating to Liability

In light of Defendants' default, this Court accepts as true the well-pleaded allegations in the Complaint, except those allegations relating to damages.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." (citation omitted)).  With respect to damages, a court "must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).  This inquiry requires that a court: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting damages." Id.

Federal Rule of Civil Procedure 55(b)(2) "allows but does not require the district judge to conduct a hearing" on the damages amount.  Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (quotation marks and citation omitted).  In the instant case, this Court finds that a hearing is unnecessary inasmuch as Plaintiff's submissions have not been contested and – as noted above – they provide sufficient information from which to calculate Plaintiff's damages.

Plaintiff worked at Mexico Magico between approximately 2009 and February 18, 2013, and between approximately August 8, 2014 and February 2015.  (Cmplt. (Dkt. No. 1) ¶¶ 20, 40; Pltf. Aff. (Dkt. No. 48-11) ¶ 7)  Plaintiff was listed as a "delivery worker" in Defendants' payroll accounts – a position for which Plaintiff could have been paid at a lower "tip-credited rate."  (Cmplt. (Dkt. No. 1) ¶¶ 5, 9-12, 63)  However, he was required to spend several hours each day – more than 20% of each work day – performing non-tipped duties unrelated to deliveries, such as making fried ice cream, sweeping and mopping the restaurant, dishwashing, washing and cutting vegetables, and taking out the garbage.  (Id. ¶¶ 5, 42, 62)

Plaintiff alleges that he regularly worked for Defendants in excess of 40 hours per week without appropriate minimum wage, overtime, or spread-of-hours compensation for any of the hours that he worked.  (Id. ¶¶ 6, 14, 59-60, 70; Pltf. Aff. (Dkt. No. 48-11) ¶¶ 26-27)  Plaintiff also claims that Defendants failed to maintain accurate recordkeeping of the hours that he worked.  (Cmplt. (Dkt. No. 1) ¶¶ 7, 56, 69; Pltf. Aff. (Dkt. No. 48-11) ¶ 22)

Plaintiff further alleges that Defendants failed to provide him with required notices and wage statements, and that he was never notified by Defendants that his "tips would be included as an offset for wages."  (Cmplt. (Dkt. No. 1) ¶¶ 53, 55, 61, 71-72; Pltf. Aff. (Dkt. No. 48-11) ¶¶ 20, 23-25)  Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff's wages.  (Cmplt. (Dkt. No. 1) ¶ 54; Pltf. Aff. (Dkt. No. 48-11) ¶ 21)

In his Proposed Findings, Plaintiff states that he seeks:

(1) unpaid minimum wages and overtime wages in the amount of $54,806.25 (Proposed Findings (Dkt. No. 47) ¶ 88);

(2) unpaid spread-of-hours pay in the amount of $5,952 (id. ¶ 90);

(3) liquidated damages in the amount of $60,758.25 (id. ¶¶ 89, 91);

(4) statutory damages under the NYLL in the amount of $10,000 (id. ¶¶ 92-93);

(5) prejudgment interest on unpaid minimum, overtime, and spread-of-hours wages at an
annual rate of 9% (id. ¶ 73); and

(6) attorneys' fees and costs in the amount of $8,664.41 (id. ¶ 96).

**B.** <u>**Willfulness and Statute of Limitations**</u>

Under the FLSA, the applicable statute of limitations is generally two years, but
the limitations period is extended to three years upon a finding that the FLSA violations by an
employer were willful.  29 U.S.C. § 255(a).  Willfulness under the FLSA is found where an
employer "knew or showed reckless disregard" as to whether the employer's "conduct was
prohibited by the statute."  <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988).
Moreover, "a defendant's default, in itself, may suffice to support a finding of willfulness."
<u>Santillan v. Henao</u>, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011) (citations omitted).  Pursuant to
the NYLL, the applicable limitations period is six years.  NYLL § 663(3).

Plaintiff commenced this action on February 13, 2017.  (<u>See</u> Cmplt. (Dkt. No. 1))
Plaintiff has alleged that Defendants were aware or should have been aware of the requirements
of the FLSA and NYLL and chose not to abide by those requirements.  (<u>See</u> <u>id.</u> ¶¶ 69, 74, 81, 88,
93, 97, 101)  Given these allegations – and Defendants' default – this Court finds that
Defendants may be considered willful violators under the FLSA, thereby entitling Plaintiff to
damages under the FLSA going back three years (rather than two years) prior to the filing of the
Complaint.  However, given that the NYLL limitations period is six years, Plaintiff may also
recover damages under the NYLL to conduct dating back six years prior to the filing of the
Complaint – that is, to February 13, 2011.  (<u>See</u> Cmplt. (Dkt. No. 1) ¶¶ 46, 48-50)

**C.**   **Legal Standard**

As noted, Plaintiff seeks recovery under both the FLSA and NYLL.  It is settled that while

> a plaintiff may be entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.  Instead, where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute that provides the greatest amount of damages.

Gonzalez Mercedes v. Tito Transmission Corp., No. 15 Civ. 1170 (CM) (DF), 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (alterations and citations omitted), adopted by 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019).  Because of the NYLL's more generous statute of limitations, the NYLL provides for the greater measure of recovery in this case.[3]  Accordingly, this Court addresses only the provisions of the NYLL.

**D.**   **Unpaid Minimum Wage**

Plaintiff has identified three wage rates that were applied while he worked for Defendants:

(1) from February 13, 2011 to January 31, 2012 ("Period 1"), he worked approximately 72 hours per week and was paid $300 per week;

(2) from February 1, 2012 to February 18, 2013 ("Period 2"), he worked approximately 72 hours per week and was paid $400 per week; and

(3) from August 8, 2014 to February 28, 2015 ("Period 3), he worked approximately 62 hours per week and was paid $450 per week.

(See Cmplt. (Dkt. No. 1) ¶¶ 46-51; Pltf. Aff. (Dkt. No. 48-11) ¶¶ 14-19)

---

[3]  Apart from the statute of limitations, the NYLL's standard minimum wage is greater than that provided under the FLSA.  Compare 29 U.S.C. § 206, with 12 N.Y.C.R.R. § 142-2.1.

Plaintiff's hourly rate is calculated by dividing the amount he was paid per week by the number of hours he worked.  This calculation yields the following rates for each of Plaintiff's pay periods:  (1) $4.17 for Period 1 ($300 per week / 72 hours); (2) $5.56 for Period 2 ($400 per week / 72 hours); and (3) $7.26 for Period 3 ($450 per week / 62 hours).

From July 24, 2009 to December 30, 2013, the New York standard minimum wage rate was $7.25.  From December 31, 2013 to December 30, 2014, the New York standard minimum wage rate was $8.00.  And from December 31, 2014 to December 30, 2015, the New York standard minimum wage rate was $8.75.  See NYLL § 652; 12 N.Y.C.R.R. § 146-1.2.[4]  By comparing each of these rates to the hourly rate Plaintiff received in the corresponding years, it is clear that Plaintiff did not receive the standard minimum wage rate under New York law.

Under certain conditions, an employer is entitled to pay an employee an hourly wage less than the standard minimum wage if the employee receives tips from customers for his or her services.  New York law, however, requires that an employer provide an employee notice before it may deduct a "tip credit" from the employee's base wage.  See 12 N.Y.C.R.R. § 146-2.2; Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015).  The burden is on Defendants to show that they have complied with the tip notice requirement.  See 12 N.Y.C.R.R. § 146-2.2(d) ("The employer has the burden of proving compliance with the notification provisions of [the NYLL].");  Villar v. Prana Hosp., Inc., No. 14 Civ. 8211 (RA) (JCF), 2017 WL 1333582, at *3 n.4 (S.D.N.Y. Apr. 11, 2017).

Plaintiff states that he was not provided with such notice.  (Cmplt. (Dkt. No. 1) ¶¶ 53, 61; Pltf. Aff. (Dkt. No. 48-11) ¶¶ 20, 24)  Because Defendants have not appeared, they have

---

[4]  Since July 24, 2009, the federal minimum wage has remained at $7.25 an hour.  See 29 U.S.C. § 206.

not met their burden to show otherwise.  Accordingly, the Court concludes that Plaintiff was paid below the minimum wage rates required by law.

Plaintiff is owed the difference between his actual wages and the prevailing minimum wage at that time.  For Period 1 – which includes approximately 50 weeks[5] – that amount is $11,100 ([$7.25 - [$300 / 72]] * 72 hours per week * 50 weeks).  For Period 2 – which includes approximately 55 weeks[6] – that amount is $6,710 ([$7.25 - [$400 / 72]] * 72 hours per week * 55 weeks).  For the first approximately 20.5 weeks[7] of Period 3, that amount is $943 ([$8.00 - [450 / 62]] * 62 hours per week * 20.5 weeks).  And for the final 8.5 weeks[8] of Period 3, that amount is $786.25 ([$8.75 - [$450 / 62]] * 62 hours per week * 8.5 weeks).[9]

---

[5]  The period from February 13, 2011 to January 31, 2012 includes 50 weeks and 2 days.

[6]  The period from February 1, 2012 to February 18, 2013 includes 54 weeks and 5 days.

[7]  The period from August 8, 2014 to December 30, 2014 includes 20 weeks and 4 days.

[8]  The period from December 31, 2014 to February 28, 2015 includes 8 weeks and 3 days.

[9]  Plaintiff includes a slightly different number of weeks in Periods 2 and 3.  In Plaintiff's calculation, the period from February 1, 2012 to February 18, 2013 (Period 2) includes 54 weeks, rather than 55 weeks; the period from August 8, 2014 to December 31, 2014 (the first portion of Period 3) includes 21 weeks, rather than 20.5 weeks; and the period from January 1, 2015 to February 28, 2015 (the second portion of Period 3) includes 8 weeks, rather than 8.5 weeks. (See Damages Chart (Dkt. Nos. 38-12, 48-12))

Thus, Plaintiff is owed a total of $19,539.25 in unpaid minimum wages.

| | Minimum Wage | Rate Received | Hours Per Week | Weeks in Period | Unpaid Minimum Wages Per Period | Unpaid Minimum Wages Per Week |
|---|---|---|---|---|---|---|
| **Period 1** 2/13/11 – 1/31/12 | $7.25 | $4.17 ($300 / 72) | 72 | 50 weeks | $11,100 | $222 |
| **Period 2** 2/1/12 – 2/18/13 | $7.25 | $5.55 ($400 / 72) | 72 | 55 weeks | $6,710 | $122 |
| **Period 3(a)** 8/8/14 – 12/30/14 | $8.00 | $7.26 ($450 / 62) | 62 | 20.5 weeks | $943 | $46 |
| **Period 3(b)** 12/31/14 – 2/28/15 | $8.75 | $7.26 ($450 / 62) | 62 | 8.5 weeks | $786.25 | $92.50 |
| | | | | | **$19,539.25** | |

**E.    Unpaid Overtime Wage**

Under New York law, any employee who works more than 40 hours per week must be paid at a rate not less than 150% of the employee's regular hourly rate for all hours beyond 40.  12 N.Y.C.R.R. § 142-2.2.  The regular rate for an employee who is not paid on an hourly basis is determined "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5.  Plaintiff's regular rate of pay is thus $7.50 ($300 / 40) for Period 1; $10 ($400 / 40) for Period 2; and $11.25 ($450 / 40) for Period 3.

Calculating Plaintiff's weekly overtime rate yields the following:  For Period 1, Plaintiff should have been paid at a rate of $11.25 ($7.50 * 1.5) for 32 hours per week (72 hours - 40 hours), equaling $360 in overtime pay per week.  For Period 2, Plaintiff should have been paid at a rate of $15 ($10 * 1.5) for 32 hours per week (72 - 40 hours), equaling $480 in overtime

pay per week.  For Period 3, Plaintiff should have been paid at a rate of $16.875 ($11.25 * 1.5) for 22 hours per week (62 hours - 40 hours), equaling $371.25 in overtime pay per week.

Plaintiff has already been awarded minimum wages for these overtime hours, for a total of:  $232 per week ($7.25 * 32 overtime hours) in Periods 1 and 2; $176 per week ($8.00 * 22 overtime hours) in the first 20.5 weeks of Period 3; and $192.50 ($8.75 * 22 overtime hours) in the final 8.5 weeks of Period 3.  (See Section III.D)

After deducting these minimum wages, Plaintiff's unpaid overtime wages are: $128 ($360 - $232) per week for Period 1; $248 ($480 - $232) per week for Period 2; $195.25 ($371.25 - $176) per week for the first 20.5 weeks of Period 3; and $178.75 ($371.25 - 192.50) per week for the final 8.5 weeks of Period 3.

Multiplied by the number of weeks Plaintiff worked, Plaintiff's unpaid overtime wages are $6,400 ($128 * 50 weeks) for Period 1; $13,640 ($248 * 55 weeks) for Period 2; $4,002.625 ($195.25 * 20.5 weeks) for Period 3; and $1,519.375 ($178.75 * 8.5 weeks) – leading to a total of $25,562 in unpaid overtime wages.

| | Regular Rate | Overtime Rate | Overtime Hours Worked Per Week | Minimum Wages Awarded for Overtime Hours Per Week | Unpaid Overtime Amount Per Week | Unpaid Overtime Amount Per Period |
|---|---|---|---|---|---|---|
| **Period 1** 2/13/11 – 1/31/12 | $7.50 ($300 / 40) | $11.25 ($7.50 * 1.5) | 32 (72 - 40) | $232 ($7.25 * 32) | $128 | $6,400 |
| **Period 2** 2/1/12 – 2/18/13 | $10 ($400 / 40) | $15 ($10 * 1.5) | 32 (72 - 40) | $232 ($7.25 * 32) | $248 | $13,640 |
| **Period 3(a)** 8/8/14 – 12/30/14 | $ 11.25 ($450 / 40 | $16.875 ($11.25 * 1.5) | 22 (62 - 40) | $176 ($8.00 * 22) | $195.25 | $4,002.625 |
| **Period 3(b)** 12/31/14 – 2/28/15 | $11.25 ($450 / 40) | $16.875 ($11.25 * 1.5) | 22 (62 - 40) | $192.50 ($8.75 * 22) | $178.75 | $1,519.375 |
| | | | | | | **$25,562.00** |

F.   **Unpaid Spread-of-Hours Wage**

Under New York law, an employee must "receive one hour's pay at the basic minimum hourly wage rate"[10] in addition to the regular minimum wage for each workday "in which . . . the spread of hours exceeds 10 hours."  12 N.Y.C.R.R. § 142-3.4(a).  "The term 'spread of hours' is defined as 'the length of the interval between the beginning and end of an employee's workday[,] including working time plus time off for meals plus intervals off duty." Inclan, 95 F. Supp. 3d at 502-03 (alterations omitted) (citing 12 N.Y.C.R.R. § 146-1.6).

Plaintiff asserts that he regularly worked twelve-hour shifts (from 11:00 a.m. to 11:00 p.m.) six days a week during Periods 1 and 2.  (See Cmplt. (Dkt. No. 1) ¶ 46; Pltf. Aff. (Dkt. No. 48-11) ¶ 14)  During Period 3, Plaintiff worked ten-hour shifts (from 11:00 a.m. to 9:00 p.m.) five times a week, and twelve-hour shifts once a week.  (See Cmplt. (Dkt. No. 1) ¶ 47; Pltf. Aff. (Dkt. No. 48-11) ¶ 15)  Plaintiff also states that Defendants granted him a 30-minute meal break, but that he was unable to take that break "on innumerable occasions, because defendants required him to work during the break."  (See Cmplt. (Dkt. No. 1) ¶ 52)

Plaintiff claims that he is owed a total of $5,952 for unpaid spread-of-hours payments (Proposed Findings (Dkt. No. 47) ¶¶ 74-75, 90), which Plaintiff claims accounts for six unpaid spread-of-hours payments each week during Plaintiff's employment.  (See Damages Chart (Dkt. No. 48-12); see also Pltf. Br. (Dkt. No. 38) ¶ 57 ("Plaintiff regularly worked more than ten hours per day throughout his entire employment."))

However, Plaintiff's Complaint and sworn declaration state that, for five days a week during Period 3, Plaintiff worked ten hours – not more than ten hours, as is required to be

---

[10]  Plaintiff incorrectly states that he is entitled to one hour of "overtime-rate pay" for each workday that exceeds ten hours.  (See Mulholland Decl. (Dkt. No. 38) ¶ 56; Inquest Br. (Dkt. No. 48) ¶ 61)

entitled to spread-of-hours payments under New York law.  See 12 N.Y.C.R.R. § 142-3.4(a).

Plaintiff is thus owed six hours of spread-of-hours payments per week during Periods 1 and 2,

but only one hour of spread-of-hours payments per week during Period 3.

Accordingly, Plaintiff is owed $2,175 ($7.25 * 6 hours * 50 weeks) for Period 1;

$2,392.50 ($7.25 * 6 hours * 55 weeks) for Period 2; $164 ($8.00 * 1 hour * 20.5 weeks) for the

first 20.5 weeks of Period 3; and $74.375 ($8.75 * 1 hour * 8.5 weeks) for the final 8.5 weeks of

Period 3 – amounting to a total of $4,805.875 in unpaid spread-of-hours payments.

### G.   Liquidated Damages

Under the NYLL, Plaintiff may recover liquidated damages for unpaid minimum

wages, overtime, and spread-of-hours payments, "unless the employer proves a good faith basis

for believing that its underpayment of wages was in compliance with the law."  See NYLL §

198(1-a).  Prior to April 9, 2011, liquidated damages under the NYLL could be awarded in an

amount equal to 25% of unpaid wages.  Id. (eff. Nov. 24, 2009).  After that date, liquidated

damages under the NYLL can be awarded in an amount equal to 100% of unpaid wages.[11]  Id.

(eff. Apr. 9, 2011).

Here, Defendants have not demonstrated that they had a "good faith basis for

believing that [their] underpayment of wages was in compliance with the law."  Id.  Accordingly,

for conduct predating April 9, 2011, Plaintiff is entitled to liquidated damages in the amount of

25% of his unpaid minimum wages, overtime, and spread-of-hours payments.  For conduct

---

[11]  The provision was later amended to permit up to 300% in liquidated damages.  That
amendment, however, did not take effect until January 19, 2016, which is after Plaintiff's last
date of employment.  See 2015 N.Y. Laws, ch. 362, § 2.  In addition, while the FLSA allows for
liquidated damages equal to 100% of liquidated damages – even for conduct before April 2011,
see 29 U.S.C. § 260 – Plaintiff may not recover damages under the FLSA for such conduct
because of the statute of limitations.  See Section III.B.

occurring after that date, Plaintiff is entitled to liquidated damages in the amount of 100% of his unpaid minimum wages, overtime, and spread-of-hours payments.

There are approximately eight weeks from February 13, 2011 to April 9, 2011 (seven weeks and six days). Plaintiff's unpaid minimum wage, overtime, and spread-of-hours payments for that time equals $4,017.333.[12] Plaintiff is entitled to liquidated damages in an amount equal to 25% of such unpaid wages – for a total of $1,004.33. The remaining payments to which Plaintiff is entitled amount to $45,889.795,[13] and Plaintiff is entitled to liquidated damages equal to this amount. The sum total of Plaintiff's liquidated damages is thus $46,894.128 ($45,889.795 + $1,004.333).

### H.  Failure to Provide Notices and Wage Statements

NYLL § 195(1) requires that, at the time of hiring,[14] an employer provide his or her employees notice of certain information, including the rate of pay and the regular pay day designated by the employer. See NYLL § 195(1)(a). Prior to April 9, 2011, the NYLL did not provide a remedy for employees who did not receive such notice. See NYLL § 195(1)(a) (eff. Oct. 26, 2009). As of April 9, 2011, the NYLL was amended to allow employees to recover statutory damages for violations of this notice requirement in the amount of $50 per workweek, up to a maximum of $2,500. See NYLL § 198(1-b) (eff. Apr. 9, 2011). After February 27,

---

[12] Plaintiff is owed $1,776 in unpaid minimum wages ([$7.25 - [$300 / 72]] * 72 hours * 8 weeks); $1,893.33 in unpaid overtime compensation ([[$11.25 * 32 hours] - [[$7.25 - [$300 / 72]] * 40 hours]] * 8 weeks); and $348 in unpaid spread-of-hours payments ($7.25 * 6 hours * 8 weeks).

[13] As explained above, Plaintiff is entitled to $19,539.25 in unpaid minimum wages, $25,562 in unpaid overtime compensation, and $4,805.875 in unpaid spread-of-hours payments – for a total of $49,907.125. $49,907.125 minus $4,017.33 is $45,889.795.

[14] From April 9, 2011 to December 29, 2014, Section 195(1) required such notices at the time of hire and on the first of every February. See NYLL § 195(1)(a) (eff. Apr. 9, 2011 to December 29, 2014).

2015, the statutory damages for violating the notice requirement were increased to $50 per workday, up to a maximum of $5,000. <u>See</u> NYLL § 198(1-b) (eff. Feb. 27, 2015). Since an employer is required to give such notice to an employee as of the date of hiring, the version of the provision in effect at the time of hiring – or at any point in which an employee's wage changes – is applied when determining statutory damages.[15] <u>See</u> <u>Martinez v. Alimentos Saludables Corp.</u>, No. 16-CV-1997 (DLI)(CLP), 2017 U.S. Dist. LEXIS 156657, 2017 WL 5033650, at *21 (E.D.N.Y. Sept. 22, 2017), <u>R&R adopted</u> 2017 U.S. Dist. LEXIS 174714, (applying version of provision in effect as of the date of hiring); <u>Perez v. Platinum Plaza 400 Cleaners, Inc.</u>, No. 12 Civ. 9353 (PAC), 2015 WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015) ("[T]hose hired before April 9, 2011[] may recover for weeks that they did not receive a wage notice when their wage rate changed after April 9, 2011." (citing <u>Cuzco v. F & J Steaks 37th St. LLC</u>, No. 13 Civ. 1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014))).

Here, Plaintiff has alleged that he was not given the notice required under Section 198(1-b) over the course of his employment with Defendants (Cmplt. (Dkt. No. 1) ¶¶ 58, 72, 104; Pltf. Aff. (Dkt. No. 48-11) ¶¶ 23, 25), and he seeks $5,000 in damages under this provision

---

[15] As noted above, from April 9, 2011 to February 27, 2015, Section 195(1) required such notices at the time of hiring <u>and</u> on the first of every February. <u>See</u> NYLL § 195(1)(a) (eff. Apr. 9, 2011 to Feb. 27, 2015). However, many courts in this District have held that employees are not able to recover statutory damages for an employer's failure to provide annual notice. <u>Compare</u> <u>Martinez</u>, 2017 WL 5033650, at *20 ("[E]mployees hired after April 9, 2011 may sue for damages under Section 198(1-b) if they were not provided with the initial wage notice upon hiring as required by Section 195(1)(a), but longer term employees, hired before 2011, have no right to recover damages even though their employer failed to provide annual notices in violation of the statute."), <u>with</u> <u>Severino v. 436 W. L.L.C.</u>, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015) (noting disagreement within the District on the issue). Since, as explained below, this Court will award Plaintiff the maximum statutory damages permitted during this period ($2,500) for Defendants' failure to provide Plaintiff notice upon a change in the terms of his employment, this Court need not reach the issue of whether Plaintiff may recover statutory damages for Defendants' failure to provide him with annual notice.

(Proposed Findings (Dkt. No. 47) ¶¶ 76-80, 92).  Plaintiff began working for Defendants in 2009 – when no private remedy was available for violations of this provision.  (Cmplt. (Dkt. No. 1) ¶¶ 20, 40)  However, he began new periods of employment on February 1, 2012 – when his wages increased from $300 to $400 – and on August 4, 2014 – when his wages increased to $450.[16] (Cmplt. (Dkt. No. 1) ¶¶ 49-51; Pltf. Aff. (Dkt. No. 48-11) ¶¶ 17-19)  The statutory maximum in effect on February 1, 2012 and August 4, 2014 was $2,500.  See NYLL § 198(1-b) (eff. Apr. 9, 2011).  Because Plaintiff worked for more than 50 weeks from February 1, 2012 until his employment terminated on February 28, 2015, and because he did not receive the requisite notice during this time, he is entitled to the statutory maximum of $2,500.

Since April 9, 2011, the NYLL has also required employers to "furnish each employee with a statement with every payment of wages," which states, inter alia, the rate of payment, the gross wages provided, and the applicable overtime rate.  NYLL § 195(3) (eff. Apr. 9, 2011).  Prior to February 27, 2015, statutory damages for violating this provision were limited to $100 per workweek, not to exceed $2,500.  See NYLL § 198(1-d) (eff. Apr. 9, 2011); accord Baltierra v. Advantage Pest Control Co., No. 14 Civ. 5917 (AJP), 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015).  Since that date, the statute was amended to allow a penalty of $250 for each workday that the violations occurred, not to exceed $5,000.  See NYLL § 198(1-d) (eff. Feb. 27, 2015).

Here, Plaintiff alleges that Defendants did not provide him with wage statements during his employment (Cmplt. (Dkt. No. 1) ¶¶ 55, 71; Pltf. Aff. (Dkt. No. 48-11) ¶ 24), and he

---

[16] Plaintiff was not employed by Defendants from February 19, 2013 to August 7, 2014.  (See Cmplt. (Dkt. No. 1) ¶¶ 46-47, 49-51; Pltf. Aff. (Dkt. No. 48-11) ¶¶ 14-19)  He thus would have begun a new period of employment for purposes of calculating statutory damages, even if his rate of pay remained unchanged from February 18, 2013 to August 8, 2014.

seeks $5,000 in statutory damages (Proposed Findings (Dkt. No. 47) ¶¶ 81-84, 93).  However, the February 27, 2015 version of Section 198(1-d) – which allows up to $5,000 in statutory damages – was not in effect for the vast majority of Plaintiff's employment, which ended on February 28, 2015.  Plaintiff is thus entitled to a maximum of $2,500 in statutory damages for Defendants' failure to provide him with wage statements until February 26, 2015.[17]  For the final two days of Plaintiff's employment – February 27 and 28, 2015 – Plaintiff is also entitled to $250 per day for Defendants' failure to provide him with a wage statement.

Accordingly, Plaintiff is due a total of $5,500 ($2,500 + $2,500 + $500) in statutory damages under the NYLL.

## I.   Prejudgment Interest

A plaintiff who prevails on a NYLL wage claim is entitled to prejudgment interest on any "underpayment" of wages.  See NYLL § 198(1-a); Schalaudek v. Chateau 20th St. LLC, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at *10 (S.D.N.Y. Feb. 24, 2017), modified and adopted by 2017 WL 1968677 (S.D.N.Y. May 11, 2017); Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016).  Prejudgment interest is not available for violations of the wage statement or wage notice provisions.  See Schalaudek, 2017 WL 729544, at *10-11 (recommending award of prejudgment interest on unpaid wages and overtime, but not on statutory damages for notice violations).  Also, "the award of prejudgment interest applies only to the amount of underpayment of wages, not the liquidated damages."  Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017) (citations omitted).

---

[17]  There are more than 100 workweeks from April 9, 2011 to February 18, 2013, and from August 8, 2014 to February 26, 2015, which far surpasses the $2,500 statutory cap.

Prejudgment interest in New York runs at a rate of nine percent per annum.  N.Y.

C.P.L.R. §§ 5001(a), 5004.  The starting date from which a court computes this interest is "the

earliest ascertainable date the cause of action existed."  Conway v. Icahn & Co. Inc., 16 F.3d

504, 512 (2d Cir. 1994) (quoting N.Y. C.P.L.R. § 5001(b)).  However, "[w]here such damages

were incurred at various times, interest shall be computed upon each item from the date it was

incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R.

§ 5001(b); see also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York

law leaves to the discretion of the court the choice of whether to calculate prejudgment interest

based upon the date when damages were incurred or 'a single reasonable intermediate date.'"

(citing 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559, 561 (2d Dep't 1996))).

"[C]ourts in this District have generally calculated prejudgment interest from a singular,

midpoint date and by multiplying the principal by the interest rate by the time period – from a

singular, midpoint date – up until and including the date judgment is entered."  Soto v. Los

Corbaticas Deli Grocery II Corp., No. 18CV3602JGKJLC, 2018 WL 4844018, at *7 (S.D.N.Y.

Oct. 5, 2018), report and recommendation adopted, No. 18CV3602 (JGK), 2018 WL 6173713

(S.D.N.Y. Nov. 23, 2018) (quotation marks and citations omitted).

Here, Plaintiff requests that he be awarded prejudgment interest in the amount of

$29,243.06 for unpaid overtime and minimum wages and $3,142.60 for unpaid spread-of-hours

compensation, as of August 23, 2018.  (See Proposed Findings (Dkt. No. 47) ¶¶ 94-95; Damages

Chart (Dkt. No. 47-12) at 2)  However, Plaintiff does not provide the methodology for his

calculation.

Since Plaintiff's claims for unpaid wages arose during two distinct periods of

employment (February 13, 2011 to February 18, 2013 and August 8, 2014 to February 28, 2015),

20

prejudgment interest will be calculated based on the median point within each of these periods. For the first of these time periods (February 13, 2011 to February 18, 2013), the median date is February 16, 2012. For the second of these time periods (August 8, 2014 to February 28, 2015), the median date is November 17, 2014.

For each of these time periods, prejudgment interest is calculated at an annual rate of 9%. For the period from February 13, 2011 to February 18, 2013, Plaintiff's unpaid wages total $42,417.50 ([$11,100 + $6,710 minimum wage] + [$6,400 + $13,640 overtime] + [$2,175 + $2,392.50 spread of hours]). Plaintiff is entitled to prejudgment interest from February 16, 2012 until the date judgment is entered at a rate of $10.459 per day ([$42,417.50 * .09] / 365). For the period from August 8, 2014 to February 28, 2015, Plaintiff's unpaid wages total $7,489.625 ([$943 + $786.25 minimum wage] + [$4,002.625 + $1,519.375 overtime] + [$164 + $74.375 spread of hours]). Plaintiff is entitled to prejudgment interest from November 17, 2014 until the date judgment is entered at a rate of $1.847 per day ([$7,489.625 * .09] / 365).

### J.   Attorneys' Fees

Because Plaintiff has made successful claims under the NYLL, Plaintiff is entitled to an award of reasonable attorneys' fees. See NYLL § 663(1). In determining this fee award, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 186 (2d Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); accord Stanczyk v. City of New York., 752 F.3d 273, 284 (2d Cir. 2014). This calculation yields a "presumptively reasonable fee," Arbor Hill, 522 F.3d at 183, and is commonly referred to as the "lodestar." Although district courts remain free to modify this award to ensure that it represents a reasonable fee and incorporates

important or unique aspects of the case, see, e.g., Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992), the lodestar figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543 (2010) (quotation marks and citation omitted).

Here, Plaintiff seeks attorneys' fees in the amount of $7,583.75, and costs in the amount of $1,080.66. (Proposed Findings (Dkt. No. 47) ¶¶ 86, 96; Aug. 24, 2018 Timesheet (Dkt. No. 47-3))

### 1.   Reasonable Hourly Rates

The hourly rate for purposes of an attorneys' fee award is "what a reasonable, paying client would be willing to pay." Arbor Hill, 522 F.3d at 184. Any such rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (quotation marks omitted) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

Because the fee applicant bears the burden of establishing the reasonableness of the hourly rates requested, the applicant must "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." Blum, 465 U.S. at 895 n.11; accord Ortiz v. City of New York, No. 15 Civ. 4392 (AT) (KNF), 2016 WL 4532983, at *3 (S.D.N.Y. July 15, 2016). The Court may also "rely on its own familiarity with prevailing rates in the District." Noble v. Crazetees.com, No. 13 Civ. 5086 (PAE) (HBP), 2015 WL 5697780, at *9 (S.D.N.Y. Sept. 28, 2015) (citing A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); and Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)).

Here, Plaintiff was represented by Michael Faillace and Colin Mulholland of Michael Faillace & Associates, P.C., a firm that specialized in labor and employment law. Faillace, who was a managing member of that law firm and who had been practicing law since 1983, seeks a rate of $450 per hour.[18]  Mulholland, who graduated from law school in 2012 and joined the firm as an associate in May 2017, seeks a rate of $350 per hour.  (Proposed Findings (Dkt. No. 47) ¶ 86(4))  At the time Plaintiff's default papers were filed, Mulholland had approximately five years of experience in employment law.  (See id.)

At the time this case was litigated (from 2017 to 2019), courts in this Circuit found $300.00 to $400.00 per hour to be the reasonable range for partners in typical FLSA cases, and $200 to $325 per hour to be reasonable for senior associates.  See Alvarez v. Sterling Portfolio Investment, LP, No. 16-CV-5337 (CBA) (VMS), 2017 WL 8790990, at *8 (E.D.N.Y. Dec. 13, 2017)), report and recommendation adopted March 12, 2018; see also Espinoza v. Broadway Pizza & Rest. Corp., No. 17CV7995RAKHP, 2021 WL 7903991, at *12 (S.D.N.Y. Nov. 18, 2021), report and recommendation adopted, No. 17CIV7995GBDKHP, 2022 WL 977068 (S.D.N.Y. Mar. 31, 2022) (noting that "rate of $300 per hour is . . . appropriate for senior associates with at least eight years of experience").  Numerous courts have found Faillace's $450 rate to be unreasonable, and such courts have adjusted his rate to $400, particularly where – as here – the given case did not involve extensive or complex litigation.  See, e.g., Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173-74 (S.D.N.Y. 2018) (citing cases); Rosales v.

---

[18]  As of November 8, 2021, Faillace has been suspended from practicing law in this District, and he has since withdrawn as counsel in this matter.  (See Dkt. No. 56)  Since the work performed by Faillace in this case was performed well before his suspension, this Court will not consider the effect of Faillace's suspension on his reputation, as it may relate to his billing rate.  See Mendoza v. Cavallo's of Chelsea, Inc., No. 18 Civ. 11147 (VSB) (DF), Dkt. No. 40 (Apr. 12, 2022 Report and Recommendation).

Gerasimos Enter. Inc., No. 16 Civ. 2278 (RA), 2018 WL 286105, at *2 (S.D.N.Y. Jan. 3, 2018) (reducing Faillace's rate from $450 to $400 in case involving a bench trial); cf. Calle v. NDG Coffee Shop, Inc., No. 16-CV-7702 (RJS), 2018 WL 1779347, at *2 (S.D.N.Y. Apr. 12, 2018) ($450 rate for Faillace and $375 rate for Mulholland appropriate where case involved a jury trial).  Courts in this District have also found Mulholland's rate of $350 to be unreasonably high. See, e.g., Reyes v. Lincoln Deli Grocery Corp., No. 17-CV-2732 (KBF), 2018 WL 2722455, at *9 (S.D.N.Y. June 5, 2018), order clarified, No. 17-CV-2732 (KBF), 2018 WL 3105070 (S.D.N.Y. June 25, 2018) (adjusting rate to $200); Lazo v. Kim's Nails at York Ave., Inc., No. 17-CV-3302 (AJN), 2019 WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019) (adjusting rate to $275).

Given that this case was relatively uncomplicated and did not proceed to trial, this Court concludes that the hourly rates sought by Faillace and Mulholland in this case are unreasonable.  This Court will reduce the requested hourly rates to the following:  $400 for Faillace, and $250 for Mulholland.

## 2.    Reasonable Number of Hours Expended

Plaintiff must also establish that the number of hours for which he seeks compensation is reasonable.  See Arbor Hill, 522 F.3d at 188.  In evaluating whether the claimed hours are reasonable, "the district court should exclude excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997).  An attorney who requests "court-ordered compensation . . . must document the application with contemporaneous time records . . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

In support of their application for attorneys' fees, Plaintiff's attorneys have submitted a copy of timesheets showing the date on which services were performed, the hours expended, and a description of the work done.  (See Aug. 24, 2018 Timesheet (Dkt. No. 47-3)) This timesheet reflects that "MF" (Michael Faillace) performed 4.7 hours of work, and that "CM" (Colin Mulholland) performed 14 hours of work, for a total of 18.7 hours of work.  (Id.) The timesheets also reflect that "PL" performed 3.25 hours of work.  Plaintiff has not explained who "PL" is.[19]  (Id.)

This Court concludes that the number of hours reflected in the submitted timesheets are reasonable with respect to work performed by Faillace or Mulholland.  However, this Court will not award any fees for the work performed by "PL," since that individual's name and title have not been provided.  See Reyes, 2018 WL 2722455, at *9 (declining to award fees for work performed by "PL").  Accordingly, this Court finds that Plaintiff may recover attorneys' fees in the total amount of $5,380:  $1,880 for Faillace ($400 * 4.7 hours) and $3,500 for Mulholland ($250 * 14 hours).

### 3.   Costs

Plaintiff also seeks costs in the amount of $1,080.66, which Plaintiff claims consists of a $400 filing fee, process server fees, and postage fees.  (See Aug. 24, 2018 Timesheet (Dkt. No. 47-3) at 2)  While this Court may take judicial notice of the $400 filing fee – and therefore finds it compensable – Plaintiff's attorneys have not submitted any documentation supporting the remaining fees requested.  Because it is Plaintiff's burden to

---

[19]  Plaintiff does not state PL's hourly rate; given that PL worked 3.25 hours on this case and that the fee requested is $568.75, it appears that PL's hourly rate is $175.  (See Aug. 24, 2018 Timesheet (Dkt. No. 47-3) at 1)

demonstrate that litigation costs were reasonably incurred, and because Plaintiff has not provided proof of the process server and postage fees, this Court will award only $400 in costs.

### CONCLUSION

For the reasons stated above, this Court declines to adopt the R&R.  Upon review of Plaintiff's submissions, Plaintiff is awarded (1) $19,539.25 in unpaid minimum wages; (2) $25,562 in unpaid overtime compensation; (3) $4,805.88 in unpaid spread-of-hours wages; (4) $46,894.13 in liquidated damages; (5) $5,500 in statutory damages; and (6) $5,380 in attorneys' fees and $400 in costs.

Plaintiff is also awarded prejudgment interest at a rate of (1) $10.459 on the principal amount of $42,417.50, to be calculated by the Clerk of Court from February 16, 2012 to the date of entry of final judgment; and (2) $1.847 on the principal amount of $7,489.63, to be calculated by the Clerk of Court from November 17, 2014 to the date of entry of final judgment. If the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of appeal, whichever is later, and no appeal is pending, then the total amount of judgment shall automatically increase by fifteen percent.

The Clerk of Court is directed to enter judgment, and to close this case.

Dated: New York, New York
September 28, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge